**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 0208 1:S2 21CR00344- 002 (LAK) |
| DAVID KENNEDY, | |
| Defendant. | |

**SENTENCING MEMORANDUM ON BEHALF OF DAVID KENNEDY**

Dated: April 03, 2024

Spodek Law Group PC

By:   */s/ Todd Spodek*
Todd Spodek
Spodek Law Group PC
233 Broadway, Suite 710
New York, NY 10007
(212) 300-5196
ts@spodeklawgroup.com

*Attorneys for Defendant*
*David Kennedy*

> *18 U.S.C. Section 3553(a) "requires a court to take account of a defendant's character in imposing sentence. And how could it be otherwise, for on this day of judgment, must not one judge the man as a whole?"*[1]

## I.   PRELIMINARY STATEMENT

The saga of David Kennedy[2] unfolds like a complex mosaic, each piece a testament to the trials, tribulations, and tenacity that define his existence. Born into a world of adversity, David's journey commenced with the premature loss of his father to a brain hemorrhage when he was just two years old, a tragedy that set the stage for a life marked by resilience and the relentless pursuit of stability for his loved ones.

Raised by a devoted single mother within the confines of a struggling household, David's formative years were shadowed by the specters of poverty and unemployment that plagued his rough neighborhood. Despite these challenges, the familial bond remained unbroken, fortified by the unwavering support of siblings and a stepfather, John Gordon, who emerged as a beacon of guidance, steering David away from the pitfalls of a wayward adolescence.

His commitment to fatherhood, epitomized by his profound bond with his daughter, Daniella, became both his driving force and his crucible.  Daniella's battle with the rarest of diseases, Chiari Malformation, necessitating surgeries and specialized care, underscored the magnitude of David's paternal devotion, a commitment that endured despite the dissolution of his relationship with Daniella's mother due to the strains of work and personal challenges.

Compounding these familial responsibilities were David's struggles with substance abuse and mental health.  A history of alcohol and drug use, dating back to his teenage years, and bouts

---

[1] *United States v. Gupta,* 904 F. Supp. 2d 349, 354 (S.D.N.Y. 2012).
[2] Throughout this Sentencing Memorandum, we refer to David Kennedy as "David" or "Mr. Kennedy."

of severe depression, particularly following a significant breakup in 2021, laid bare the vulnerabilities that shadowed his path. These factors inadvertently led him to make decisions he now profoundly regrets.

Professionally, David demonstrated ambition and resourcefulness from his early days as a spray painter to his ventures in the real estate sector. Yet, it was his personal vulnerabilities, compounded by economic pressures, substance abuse, and the desire to provide for Daniella, that led to decisions he now deeply regrets.  His acknowledgment of the need for treatment for his alcohol use and the unwavering support from family and friends testify to his commitment to turning over a new leaf.

David stands before this Honorable Court, having accepted his role after having pleaded guilty to one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §1349. David's decision to plead guilty represents his sincere acknowledgment of his actions and their consequences. This step has not been taken lightly, and David is acutely aware of the gravity of his actions and their impact on his life and family.

We ask Your Honor to grant a significant downward variance. We submit that such a sentence is just and fair because it takes into account David's history and characteristics, the facts and circumstances of the offense, and meets the statutory requirement of 18 U.S.C. § 3553(a) that a court impose a sentence that is "not greater than necessary" to achieve the goals of punishment.

David Kennedy respectfully submits this memorandum in connection with his sentencing.

## II.    DAVID'S PERSONAL HISTORY AND CHARACTERISTICS

### A.  The Formative Impact of Family Dynamics and Early Adversities on David's Life

David Kennedy's formative years were etched against the gritty canvas of New Castle, UK. According to Allan Harper, who has known David both socially and professionally, David managed to inherit the best qualities of his surroundings growing up: "he displayed typical traits of that region which are that of honor, respect, and comedy which makes him the person he is, very down to earth and approachable."[3] Alan Armstrong, having known David his entire life, states:

> David was a very popular boy and my father, who was a retired veteran of the second world war, doted on David and together they visited museums and historical locations here in the U.K.
>
> David used to holiday with my family at our home in London and was always well behaved.
>
> When he was a teenager he quickly developed a passion for work and was employed in local manufacturing industries.[4]

His inception into life's complex weave began with the untimely death of his father to a brain hemorrhage when David was just two years old, instilling an early acquaintance with profound loss.[5] His mother, Hilda Gordon, now nearing the twilight of her years and facing blindness, remains a steadfast figure from his past, a retired homemaker whose life has been a narrative of quiet endurance.[6] As his cousin Berry Errington states: "David tries to get back home as much as possible to see his mother and family."[7] His friend of nearly two decades, Elliot DeMarco states:

---

[3] EXHIBIT A-1 – Letter from Allan Harper
[4] EXHIBIT A-2 – Letter from Alan Armstrong
[5] *See* PSR ¶ 79.
[6] *Id.* at ¶ 79.
[7] EXHIBIT A-3 – Letter from Barry Errington

he is a main provider for his elderly Mother Sister and brother back in Newcastle UK as they both are not well and relied on David to hold the family together. David has overcome many hardships in his life and one in particular was the sudden death of his step Father John Gordon which really rocked him and his family.

David was managing an office for MRI in Croydon in London at the time and I had to step in and manage the office for him for several months. This is the point in time when David really needed to help his family and has been holding his family together ever since as he was very close to his step Father and they needed his support both physically and financially ever since.[8]

David's sibling ties are a reflection of life's indiscriminate hand. According to his friend, Malcolm Beig, following the loss of his father, David "looked up to his older siblings for guidance."[9] Unfortunately, David's half-brother, Dennis Rogan, is a man whose life has been marred by substance abuse and incarceration, and now battles with persistent kidney issues. Dennis is often hospitalized, and at the end of these periods of hospitalization he returns to care for their aging mother. Janice Armstrong, his half-sister, contends with the remnants of a life laboring through heart conditions. The specter of mortality further touched David with the loss of three siblings—Maureen, Beverly, and Jim, the latter having "drank himself to death," a somber echo of the very demons David would later confront and still grapples with.[10] Layton Roy, David's friend for over forty years, states:

I am very close with his siblings, one of which is very ill with kidney and liver problems, I also know his mother very well and I will support her in any way that I can during his absence as she has suffered tremendous loss over the years too. David's brother and sisters have since passed on, she has lost two husbands, and his mum is likely to lose another son soon to ill health so with David incarcerated it is very difficult on her in her old age to think she

---

[8] EXHIBIT A-4 – Letter from Elliot DeMarco.
[9] EXHIBIT A-5 – Letter from Malcolm Beig
[10] *See* PSR ¶ 80.

may never see David again.  The ripple effect is there for all to see from this bad situation he finds himself in now.[11]

Emily Nesbitt, David's youngest niece, who has known him all her life, states:

> His mother (my grandmother) is also suffering greatly, she has already felt the loss of 3 children and now with David being away she is heartbroken and can barely sleep as she fears she will never see him again as she is in her late eighties.[12]

Another of David's niece, Lucy Armstrong, states:

> She has lost three children. David's sister: one in a tragic car accident at 21 years old and one in her 40's very suddenly. Her son (David's brother died of cancer in 2000). Her other son is also very sickly right now and is in and out of hospital.[13]

Phil Murray, having known David their entire lives, states:

> Davids mother resides in the U.K. She is 89 years of age and does not enjoy good health, he has obvious concerns over the impact of his expected custodial sentence will have on their direct contact.[14]

Kennedy's youth bore the imprints of his stepfather, John Gordon, who entered his life at the age of 14 and whose subsequent death from Parkinson's Disease in 2007 marked another chapter of bereavement in David's life.[15]  Kennedy fondly recalled how John Gordon "saved him from a wayward adolescence" and became a pivotal figure in his journey toward manhood.[16] Despite the barriers imposed by his current circumstances, David's bond with his mother endures and is a testament to the family ties that have both grounded and grieved him. As his friend Christopher John McCormick states:

> I fear David shall never see his mother (my great-aunt) Hilda Kennedy again due to her age and failing health, his older brother

---

[11] EXHIBIT A-6 – Letter from Layton Roy.
[12] EXHIBIT A-7 – Letter from Emily Nesbitt
[13] EXHIBIT A-8 – Letter from Lucy Armstrong
[14] EXHIBIT A-9 – Letter from Phil Murray
[15] *See* PSR ¶ 82.
[16] *Id.* at ¶ 82.

> Dennis who is also very ill with  liver disease and in and out of hospital regularly in the UK too.  These are all factors he has to live with and I know they weigh very heavy on him and the family that this reality may well come true.[17]

Also on the subject of David's mother, his niece Lucy Armstrong states:

> My nana (David's mother) at 88 is getting very frail and struggles in walking. She is only able to get out of the house if we assist her. She adores David and this news has been very difficult for her to deal with. She is very afraid that at her age she may not see her son again.[18]

In these recollections, Kennedy paints a portrait of a family life that, while punctuated by support and closeness, was never far away from hardship and heartbreak. The adversities faced by his family members not only underscored the fragility of life but also the shared resilience that David would come to embody. As his friend Graham Badger states:

> My concerns are that he is living in an unknown world now and I know he will be chastising himself up over the fact that he may never see his mother again due to her old age and failing health as of late. He has had many losses in his life, a father as an infant himself. Two sisters and a brother as well as a stepfather that was his guiding star for many years.[19]

It is within this familial crucible that the contours of David's character were forged amidst the interplay of loyalty, loss, and the enduring hope for brighter days.

As David stands before this Court, it is imperative to recognize that his journey to this point has been one of constant struggle against the odds. The values of perseverance and resilience, forged in the crucible of his early life's challenges, have been pitted against the harrowing realities of his upbringing. In this context, David's search for stability and

---

[17] EXHIBIT A-10 – Letter from Christopher John McCormick.
[18] EXHIBIT A-8 – Letter from Lucy Armstrong
[19] EXHIBIT A-11 – Letter from Graham Badger

self-sufficiency led him down a darker path, culminating in actions for which he is standing before the court today.

### B. The Crucible of David's Daughter's Rare Disease: A Father's Unyielding Support

The birth of his daughter, Daniella, marked a pivotal chapter in David Kennedy's life, instilling a profound sense of purpose and deepening his capacity for sacrifice. As David himself has articulated, his relationship with Daniella is "very close," reflecting not just the physical bond of fatherhood but the shared journey through her health challenges. David and his former partner, Fransisca Burros, navigated the complexities of parenting Daniella, who has been courageously battling Chiari Malformation, a condition that demanded David's unwavering support and financial commitment.

David's dedication to Daniella's well-being has been steadfast, as evidenced by his substantial child support contributions, which he had endeavored to maintain despite personal hardships. Prior to his arrest, David made court-ordered payments of "$2,698.91 per month," a figure that speaks volumes about his commitment to his daughter's welfare.[20] Even in the face of his legal challenges, David's focus remained on providing for Daniella, with plans to adjust the support payments reflecting an acute awareness of his responsibilities and a willingness to adapt to changing circumstances.

The gravity of Daniella's medical needs is significant. She had a surgery in 2022 to relieve pressure in her brain and will need a second surgery that is more intrusive.[21] David's friend and Daniella's godfather, Christopher John McCormick, echoes this sentiment:

> I have known David since childhood and I am his daughters Godfather, Daniella unfortunately suffers from Hydrocephalus, a water on the brain condition that may require another medical

---

[20] *See* PSR ¶ 85.
[21] *Id.*

operation in the coming years, being Godfather I am only too willing of course to assist financially and emotionally during this difficult period in her young life. It is made all the worse having her father incarcerated in another country during these formative years, particularly as she is struggling with the unknown outcome of normality in her own life, will she be able to horse ride again? Play sports? Enjoy amusement fairground rides? Who knows but we all know for sure it would be of great benefit for David to be with his family at the soonest opportunity as his absence is affecting many people that care for him, love him and quite honestly need him.[22]

The emotional toll of David's separation from his daughter, especially during such a critical time, cannot be overstated. It is a testament to the profound love and commitment of a father who finds himself at a crossroads, his heart entwined with the fate of his child. Gerry Bramley states, "I have also witnessed David's unwavering commitment to his family, especially his daughter Daniela, who faces health challenges. His dedication to her well-being is a testament to his character. He balances his family responsibilities with grace, always putting their needs at the forefront."[23] Fraser Bramley states, "He frequently traveled long distances to be with her in the hospital, often arriving at work directly from these overnight visits in yesterday's clothes. His commitment and love for his daughter are strongly evident, and I believe her well-being significantly benefits from his presence."[24]

Layton Roy, a friend of over 40 years, states that:

[It] makes me wonder how his 11 year old daughter Daniella must feel losing her father's presence at this crucial stage of her life, particularly as I know she has been through some serious medical procedures and will continue to need ongoing medical attention and without her father by her side it must be a daunting prospect for her young mind to cope with.[25]

---

[22] EXHIBIT A-10 – Letter from Christopher John McCormick.
[23] EXHIBIT A-12 – Letter from Gerry Bramley.
[24] EXHIBIT A-13 – Letter from Fraser Bramley.
[25] EXHIBIT A-6 – Letter from Layton Roy.

Many family members and friends share this concern about Daniella. Included in this group is David's niece Emily Nesbitt, who states:

> His daughter Daniella is now growing up without her father and is unable to visit him as she resides in Spain. I fear they will lose their relationship and this could impact Daniella in a rather bad way as she doesn't have the support of her father whilst navigating her way through her childhood and teens.[26]

Franco Meza, having known David for two decades, states:

> I have come to know David as an exceptional individual with unwavering integrity and a deep commitment to those he cares about.
>
> Unfortunately, David finds himself in a difficult situation. His absence from his family, particularly his 12-year-old daughter, has had a profound and detrimental impact on her emotional well-being. As a close friend and someone who considers David family, I cannot emphasize enough the importance of his presence in his daughter's life. The support of a loving father is irreplaceable in a child's development, and David's absence has left a void that cannot easily be filled. Furthermore, David's elderly mother and ageing siblings are grappling with the challenges of supporting his daughter during his absence due to geographical circumstances and distance.[27]

Another member of the large group of people who care about David Kennedy and his relationship with his daughter is Susan Errington, who worked with David for well over a decade. She states: "His incarceration will have a massive impact on his daughter who will miss him terribly as she is now. It's hard for her to understand why her daddy isn't there for her."[28]

The support of Ms. Burros and Daniella, who continue to stand by David, underscores the strength of the family unit and the collective resolve to navigate the current adversity. It is within this context of unwavering paternal dedication that David's actions and decisions must be

---

[26] EXHIBIT A-7 – Letter from Emily Nesbitt
[27] EXHIBIT A-14 – Letter from Franco Meza
[28] EXHIBIT A-15 – Letter from Susan Errington

viewed—a father driven by the desire to ensure his daughter's health and happiness, even when faced with his own personal and legal battles. Richard, another figure in David's close-knit circle, speaks to the essence of David's character: "His unconditional support was a trait he expressed strongly to his family, particularly to his daughter Daniela. Despite her ill health, David's devotion never wavered. He spent considerable time with her in the hospital, often showing up to work directly from overnight stays there."[29]

As this Court deliberates on the appropriate sentence for David Kennedy, it is crucial to weigh the impact of his potential absence on his daughter's life. The support payments, the emotional bond, and the shared struggle against Daniella's medical condition are all threads woven into the fabric of David's story, each highlighting the centrality of his role as a parent. This Court's decision holds in the balance not only David's future but also the well-being of a young girl who depends on her father's presence during her most challenging moments. Daniella herself expresses the deep bond and the void left by her father's absence in a heartfelt letter:

> My name is Daniella Kennedy and I an 11 years old. My dad is David Kennedy, he is in prison in New York now after being move from the prison in Madrid. I speak to him a lot on the phone and I know is very sorry what he has done and the pain tha he has caused to evergone, I am sure he will never do anything bad again and has leamed his lesson. I hope my Dad can take me to School again once day as well as take me swimming and walking which is good for my condition, I would lik to visit him when loan as he won't get any visitor as being to far away from is familly a friends. I pray that he is allow to come home soon.[30]

This void is also obvious to those who have had the pleasure of watching David's and Daniella's relationship grow over the years. Ian Murray, who has been friends with David for over twenty years, states:

---

[29] EXHIBIT A-16 – Letter from Richard Paulin.
[30] EXHIBIT A-17 – Letter from Daniella Kennedy.

> Because I have spent that time with Dave and his daughter and I understand how close their relationship is, I can absolutely testify that Dave and Daniella being separated is having a devastating impact on both of their lives. Daniella went through an extremely serious medical procedure last year and was very ill. That is a huge emotional hurdle for an eleven-year old to go through, but not being with her dad now must make her life at the moment especially challenging.[31]

David's dedication to his only child Daniella's well-being and the love he has poured into her life is immeasurable. His prolonged incarceration would create an emotional void that cannot be easily filled. As this innocent child would face the severe hardship of prolonged separation from her loving father, we implore the Court to consider the far-reaching consequences of its decision, not only on David but on the life of his beloved daughter as well.

### C.  Mental Health and Substance Abuse Challenges

David Kennedy's descent into the quagmire of substance dependency commenced alarmingly early in life. As he has recounted, the first taste of an alcoholic beverage came at the tender age of 13, marking the beginning of a pattern that would extend deep into his adult years.[32] He consumed alcohol daily for many years. His initiation into marijuana and mushrooms at the same young age without any strict fatherly guidance set a precedent for habitual use, with marijuana becoming a daily constant until the day of his arrest and mushrooms a seasonal companion during his teenage years.

The landscape of David's emotional well-being was further marred by a severe bout of depression triggered by a breakup in 2021, a life event that plunged him into a state of despair. In his own words, David revealed, "he went through a breakup in 2021 and became severely

---

[31] EXHIBIT A-18 – Letter from Ian Murray
[32] *See* PSR ¶ 98.

depressed."[33] This period of emotional turmoil led him to self-medicate with "tablets" provided by a friend, highlighting the lengths he would go to find solace amidst his inner turmoil.[34]

Debbie Robson, having known David for eighteen years, states:

> He was always good to me and everyone around him and supported me through some tough times. I heard that he took the break up with his partner quite badly and turned to alcohol, so I know he cannot have been in a good place mentally at this time.[35]

The intersection of David's mental health challenges and substance use culminated in a period of suicidal ideation following his arrest, a testament to the depth of his despair. Yet, it is in his resilience and acknowledgment of the need for treatment that glimpses of hope emerge. David stated that "the thoughts did not linger, and he would never act on them [and] disclaimed current suicidal ideation."[36] David's recognition of his substance use as a significant factor in his current predicament and his openness to seeking help mark the first steps toward a path of recovery and redemption. He had his last drink on November 29, 2022.

As this Court considers David Kennedy's sentencing, it is imperative to weigh the intricate web of mental health issues and substance dependency that have characterized his journey. David's story is one of a man ensnared in the grip of personal challenges, seeking refuge in temporary escapes that ultimately led him astray. His acknowledgment of these challenges and his willingness to confront them head-on speak to an underlying strength and a potential for positive transformation.

It is within this context of David's complex personal struggles and his earnest efforts to overcome them that his actions and the path to his current circumstances must be viewed. His

---

[33] *Id.* at ¶ 95.
[34] *Id.* at ¶ 95.
[35] EXHIBIT A-19 – Letter from Debbie Robson
[36] *See* PSR at ¶ 96.

journey, marked by moments of despair and resilience, underscores the profound impact of mental health and substance use on individual lives and the critical importance of support, understanding, and compassion in navigating the road to redemption.

### D. David's Path of Remorse and Rehabilitation

David Kennedy's commitment to rehabilitation is interwoven with his academic achievements and professional experiences. His educational journey, beginning with the completion of high school in Hebburn, United Kingdom, reflects his early recognition of the value of education. Although his tenure at South Tyneside College was cut short by the necessity to support his family, this decision underscored David's sense of responsibility and his willingness to prioritize the needs of his loved ones over personal ambitions. David aspires to be gainfully employed upon release, with interests spanning real estate, landscaping, and construction, demonstrating a proactive stance towards reintegration into society and contributing positively to the community.

His entrepreneurial endeavors attest to his business acumen and real estate expertise. His previous work as a freelance real estate agent and a regional manager with MRI Offices Property has endowed him with a wealth of experience and a track record of sustained employment and professional responsibility within the industry. His friend Gerry stated that "[David] introduced me to his network, invited me to social gatherings, and made me feel included. These gestures were invaluable in helping me find my footing in Marbella and fostered a sense of belonging."[37] Fraser Bramley, Gerry's son, who has known David for five years, has been similarly impacted by his acquaintance with David. He states:

> David offered invaluable personal and business advice, and
> mentorship during my early entrepreneurial endeavors.

---

[37] EXHIBIT A-12 – Letter from Gerry Bramley.

David generously provided free space for my startup, creating a professional environment essential for growth. His door was always open for guidance which significantly contributed to my personal and professional development, leading to the successful exit of my first business and the pursuit of a venture in data software. David has always shown genuine care for my well-being and success, never seeking anything in return.[38]

Dean McEnteggart states:

David has consistently been someone I can rely upon and confide in. During one of the most challenging periods of my life, I came to truly appreciate his character and capacity for empathy.

In 2021, I was struggling with the loss of an immediate family member after a long and painful battle with cancer, made incredibly worse due to the pandemic. Simultaneously, the demands of my professional life were creating an unmanageable amount of pressure that led me to a fragile state of mind.

It was during this time that David stepped up as a beacon of support and strength. Drawing upon his own experiences of loss, he was able to relate to the pain and anguish I was experiencing, as he too had lost a close family member.

David is a loving and devoted family man, and I have no doubt that the separation from his daughter and other family members will have a direct and detrimental impact on their well-being as well as his.

They rely on David both financially and emotionally, and his absence will be deeply felt.[39]

David's niece Emily Nesbit recounts:

My uncle has been a constant support throughout my life, especially during my younger years when I experienced the loss of both parents at 17 years old, my mother being his sister. We both

---

[38] EXHIBIT A-13 – Letter from Fraser Bramley
[39] EXHIBIT A-20 – Letter from Dean McEntaggart.

went through an extremely difficult and emotional time and I
sometimes felt a bit isolated from my mother's side of the family
and not included. David always kept in touch and ensured that I
was included in family get togethers. I have also suffered[40]

His early work as a spray painter for AMI and a vehicle painting company reveals a
diverse skill set and adaptability, qualities that bode well for his future employability. Despite
facing chronic back pain from a slipped disc since 2007 and the potential need for hip
replacement surgery, David remains determined to overcome these physical challenges. His
condition underscores the importance of his return to a productive and self-sustaining life, one
where he can continue to support his family, including the medical needs of his daughter.
Christopher John McCormick states in a heartfelt note:

> If you have read the other letters of support for David you will
> have an idea that this situation is out of character in the eyes of
> many, he has always been a very genuine and supporting friend to
> others and a fantastic father to his only child Daniella. In his
> attitude to succeed, it seems to all that know him that he has
> walked into something with extreme naivety and out of character
> to the David we all know and care for and for that he will pay the
> price and is willing to do so. I only hope that you can see fit to
> consider the fact that he is of an age to make amends and create a
> second chance for himself sooner rather than later and to be there
> for his daughter as soon as possible and maybe, just maybe see his
> loving mother again.[41]

Mark McCormick, having known David for over three decades states:

> I was a troubled youth and due to the choices I was making, I was
> finding that options for me were beginning to become limited. I
> was doing poorly in school and taking part in anti-social behaviour
> that was having a negative impact on myself and my family. I
> began to look up to David as he was one of the few that would take
> the time to offer a young man meaningful advice and made an

---

[40] EXHIBIT A-14 – Letter from Franco Meza
[41] EXHIBIT A-10 – Letter from Christopher John McCormick.

effort through various channels to find out how and what I was doing and provided a steadying influence in my life at that time.

When it had become evident that I was beginning to spin out of control with alcohol and drug use, it was Dave that sat me down, told me some home truths and made the case for me to join the Armed Forces. After much convincing, it was Dave that paid my bus fare and accompanied me to the Armed Forces Careers Office ten miles away in South Shields and sat patiently in the waiting room as I signed the forms and took the tests.

His incarceration has wounded me deeply as I know it has his family, both young and old. It has impacted them far more than myself, I am sure. I can only imagine the pain and heartache they are going through on a daily basis as true to form, Dave has provided an integral support base for his large family throughout his life, and I know they are bereft without him. The loss they feel is not only impacting their physical health, but I know their mental health is suffering also.[42]

Mark Bernadelli, who has known David for two decades, states:

When I was having difficult times going through a divorce and living away from my children, I turned to alcohol and ended up seriously in trouble mentally and physically. Basically, I was on the road to ruin, but David was there for me through that dark period of my life and I will forever be grateful to him. He helped me turn my life around and now I have a family business with my son. I am sure if I hadn't had David's help things would have turned out a lot different for me.[43]

Graham Badger, a former classmate and long-time friend of David, states:

I have known David since our school days, he was always the friend you could rely on back then and has been through-out. I have personally battled and beaten testicular cancer twice. Both times were understandably harrowing for me due to surgery resulting in the worse possible situation any man can find himself in and on both occasions my friend David was there to comfort me and help me through it. He offered me a place to stay and retreat to during my recovery period. He was at those times my absolute Rock! And I do not say that lightly. Just when I thought laughter

---

[42] EXHIBIT A-21 – Letter from Mark McCormick.
[43] EXHIBIT A-22 – Letter from Mark Bernadelli.

was gone forever, he'd bring back a smile, and for that I am forever thankful as it was the turning point for me.[44]

Andrea Scrimger, having known David for thirteen years, states:

David looked out for me and helped any way he could with finding an apartment and looking for a job. He would always invite me to the family events and really looked after me as I didn't know anyone at that time.[45]

David Kennedy's journey toward rehabilitation is not merely a set of individual achievements but a testament to his resolve to forge a positive path forward. His past actions, marked by dedication and responsibility, combined with his clear vision for the future, advocate for his readiness to make amends, realize his full potential as a contributing member of society, and set the right example for his daughter. Franco Mazo echoes this sentiment:

David has always been a responsible and loving father, and I have witnessed his dedication to providing a safe and nurturing environment for his child. I firmly believe that he is deeply committed to making amends and ensuring a positive future for his daughter.[46]

On the subject of David's character, Robert Evans, a retired Senior Tax Investigator for the UK Government, having known David for three years states:

I have known David Kennedy for three years socially and if I had any suspicion about his good character I would have distanced myself from him and any of his associates. In my professional experience, I have developed a keen sense in this area.[47]

Bas van Vegchel, who has been David's friend for over two decades, states:

I met Dave approximately 20 years ago in Spain, working in the same real estate agency. He was a manager for the company and was always ready to help everybody out. During the years I got to

---

[44] EXHIBIT A-11 – Letter from Graham Badger
[45] EXHIBIT A-23 – Letter from Andrea Scrimger
[46] EXHIBIT A-14 – Letter from Franco Meza
[47] EXHIBIT A-24 – Letter from Robert Evans

know David he was a friendly young man who never got into any trouble, so it was a big shock to hear of his arrest.[48]

Richard Callinan, a property and banking professional in the United Kingdom, who has also known David for twenty plus years, states:

> I have always found David to be a very straightforward and honest individual in all of our collaborative projects and have always been very pleased with how he treats clients and his other collaborators.[49]

> I would like to confirm that when possible we would be very happy to recruit David Kennedy to be a consultant with The Redland Property Group which is an international property consultancy which specialises in identifying real estate projects on a global basis and facilitating the purchase for clients from a wide variety of international locations.[50]

Hector M. Franco, a senior manager in Silicon Valley, who has also known David for

twenty plus years, states:

> David has always been an ethical and moral soundboard, a colleague and a dear friend. This has been very apparent especially in the most trying and difficult of times in my life. During our work in Spain he and I had an extensive and busy schedule, constantly traveling and running large teams of account executives. We were both promoted many times over the years because of our commitment to driving a customer first mentality. David was always very supportive of me and my role with the company, we would travel 40 plus weeks of the year, which as you can imagine was very diverse and stressful as we were doing multiple roles for this company. Even though at times we were thousands of miles away, David always had my back even when we were in different times zones (early morning or late at night) I could count on having a candid conversation. I have always seen David as a viable business partner, colleague and a source of unconditional assistance.[51]

> David has overcome many hardships in his life, losing his father and sister at the ages of 2 and 5 respectively then losing another

---

[48] EXHIBIT A-25 – Letter from Bas van Vegchel
[49] EXHIBIT A-26 – Letter from Richard Callinan
[50] EXHIBIT A-27 – Offer Letter from Richard Callinan
[51] EXHIBIT A-28 – Letter from Hector M. Franco

> sister, step father and brother in law who was like a father to him in 2007, all of which tragically passed within less than a week of each other. At this time David was integral in keeping the family together and moved to Newcastle to live with his mother for a year, putting aside other major responsibilities in his life to grieve with his family as well as support them physically and financially. He continued to manage offices in London, Dublin and Belfast responsible for dozens of employees and in a highly pressurised working environment, many of the people that did not know him well were extremely surprised at how well he coped but those close to him know this is typical of his gentle but optimistic personality, always looking out for others and seemingly never allowing his own personal issues to affect those around him.[52]

As laid out above, David is not a threat to society that must be incapacitated; he is a gentle, smart, dedicated father who has already embarked on the journey of personal growth and redemption. We urge the Court to consider David's actions in the context of the turbulent, painful, and helpless father's life and sentence him accordingly, recognizing his potential for rehabilitation and his sincere desire to make amends.

## III.   THE ADVISORY GUIDELINES CALCULATION

We do not dispute the guideline calculation set forth in the PSR. This range is purely advisory.[53] However, we urge the court to grant a significant downward variance. Concerning the Guidelines, post-*United States v. Booker*,[54] it is "emphatically clear that the Guidelines are guidelines – that is, they are truly advisory."[55] Although the Guidelines are to be given "fair consideration" "before imposing" a sentence, "in the end, [the Court] must make an 'individualized assessment' of the sentence warranted by § 3553(a) 'based on the facts presented.'" *United States v. Jones*.[56] *See also Pepper v. United States*[57] ("It has been uniform

---

[52] Ibid.

[53] *United States v. Brown*, 974 F.3d 1137, 1144 (10th Cir. 2020).

[54] *Booker*, 543 US 220, (2005).

[55] *United States v Dorvee,* 616 F3d 174, 183 (2d Cir 2010).

[56] *United States v. Jones,* 531 F.3d 163, 170 (2d Cir. 2008) (citations omitted).

[57] *Pepper v. United States*, 562 U.S. 476, 487 (2011) (internal quotations and citations omitted).

and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). Regarding this individualized assessment, "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." [58] Indeed, the Court "may vary [from the Guidelines range] based solely on policy considerations, including disagreements with the Guidelines."[59] the court need not find "extraordinary circumstances to justify a sentence outside of the Guidelines range."[60]

Accordingly, the range calculated under the Guidelines is purely advisory and serves as just one of many factors that the Court is required to "consider" when fashioning an appropriate sentence.[61] "[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."[62] Indeed, "[e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the [18 U.S.C.] § 3553(a) sentencing factors."[63]

---

[58] *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original).
[59] *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (quotations and citations omitted).
[60] *Gall v. United States,* 552 U.S. 38, 47 (2007).
[61] *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).
[62] *Rita v. United States*, 551 U.S. 338, 351 (2007).
[63] *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010).

IV.    **A BALANCED CONSIDERATION OF ALL RELEVANT FACTORS UNDER 18 U.S.C. § 3553(a) DEMONSTRATES THAT A SENTENCE WELL BELOW THE GUIDELINES RANGE IS SUFFICIENT, BUT NO GREATER THAN NECESSARY, TO ACHIEVE THE GOALS OF SENTENCING**

18 U.S.C. § 3553(a) directs that a court "shall impose a sentence *sufficient*, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection," which include:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[64]

In addition to considering each of these purposes, the Court also shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)), "the kinds of sentences available" (18 U.S.C. § 3553(a)(3), "the kinds of sentence and the sentencing range established" under the applicable Sentencing Guidelines (18 U.S.C. § 3553(a)(4), and "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)). Accordingly, the range calculated under the Guidelines is purely advisory and serves as just one of many factors that the Court is required to "consider" when fashioning an appropriate sentence.[65]

A sentencing court must begin its analysis by calculating the applicable Guidelines range and then consider all the Section 3553(a) factors to determine whether they support the sentence requested by the parties.[66] The Court must make an individualized assessment based on all of the

---

[64] 18 U.S.C. § 3553(a)(2)  (emphasis added).
[65] *Id.*
[66] *Gall v. United States*, 552 U.S. 38, 50 (2007).

facts to determine whether a departure or variance is warranted.[67] After conducting this inquiry, a District Court is free to impose <u>any</u> sentence that is "reasonable" and may depart or vary from the Guidelines for any fair and just reason.[68]

      After thorough consideration of all the relevant factors, David Kennedy respectfully submits that a significant downward variance is appropriate in this case. As set forth below, such a sentence is consistent with sentences imposed on similarly-situated defendants, takes account of the other circumstances of this case discussed herein, and is "sufficient, but not greater than necessary" to achieve the goals of criminal punishment under 18 U.S.C. § 3553(a).

### A. A Significant Downward Variance Is Consistent with Sentences Imposed on Substantially Similar Defendants Convicted of Similar Conduct

      18 U.S.C. § 3553(a)(6) directs this Court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."

      Fraud / Theft / Embezzlement cases in this District, as well as nationally, have frequently resulted in sentences substantially below the Guidelines range. Significantly, in 2020, 59.2% of the Fraud / Theft / Embezzlement cases in the Second Circuit received a variance from the Guidelines at sentencing, and only 25.5% of drug distribution cases in the Second Circuit received a guideline sentence.[69] In 2021, 54.4% of Fraud / Theft / Embezzlement cases in this Circuit received a downward variance, and only 27.3% of Fraud / Theft / Embezzlement cases in the Second Circuit received a guideline sentence.[70] In 2022, 59.4% of Fraud / Theft /

---

[67] *Id*.

[68] *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008).

[69] 2020 Annual Report and Sourcebook of Federal ... Accessed April 4, 2024. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-source books/2020/2020-Annual-Report-and-Sourcebook.pdf.

[70] 2021 Annual Report and sourcebook of federal sentencing ... Accessed April 4, 2024. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-source books/2021/2021_Annual_Report_and_Sourcebook.pdf.

Embezzlement cases in the Second Circuit received a downward variance, and only 22.3% of such cases in the Second Circuit received a guideline sentence.[71]

### B.  Mr. Kennedy's Adversities and Struggles Warrants Leniency

The Court in *Gupta* noted that:

> "Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense. Whereas apples and oranges may have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results."[72]

One of the first factors identified for consideration under 18 U.S.C. § 3553(a) is "the history and characteristics of the defendant." As recognized by this Court in *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006):

> [S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance.
>
> This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics" of the defendant.

One goal of the justice system is to catch and stop bad conduct in the present; a sentence serves to both punish and deter a defendant, with the intent of changing future behavior. Before the Court stands David Kennedy, a 48-year-old whose life story is marked by resilience in the

---

[71] FY 2022 annual report and sourcebook of federal ... Accessed April 4, 2024.
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-source books/2022/2022-Annual-Report-and-Sourcebook.pdf.
[72] *Gupta,* 904 F.Supp.2d at 350.

face of adversity. Kennedy's formative years were beset with challenges, including the early loss of his father and subsequent economic hardships. Yet, these early life experiences did not define his character; instead, they shaped a man who values responsibility and strives for self-improvement.

Kennedy's commitment to his family, particularly his daughter Daniella, who faces a serious medical condition, has remained unwavering throughout his life's trials. His dedication to her well-being has been the catalyst for his pursuit of consistent employment and a stable home life. Despite his past substance use, Kennedy's current focus is on rehabilitation and contributing positively to society. His history of gainful employment and the skills he has acquired illustrate his potential for a successful reentry into the community. With his daughter's health as his motivation, Kennedy seeks the opportunity to continue supporting her through her medical journey.

At his core, Mr. Kennedy is a man amid a personal transformation, with a life that holds chapters yet to be written—chapters ripe with potential for understanding, contribution, and redemption. David's journey has more chapters waiting to be written, chapters that can be filled with understanding, rehabilitation, and redemption. The leniency granted by the court would not only serve Mr. Kennedy's interest but would also materially support his daughter during a critical time in her life.

**C.  A Sentence Well Below the Guidelines Range Will Be More Than Sufficient to Achieve the Goals of Specific and General Deterrence**

18 U.S.C. §3553(a)(2) requires this Court also to consider the need to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant," which courts have interpreted to mean both specific and general deterrence.[73]

The case before the court has taken its toll on David, evident in the weight of responsibility he carries for his daughter Daniella's future and the stark realities of his past actions. Mr. Kennedy, now 48, is acutely aware of the precious time lost and the pressing need to provide stability and support for his daughter, who is enduring a significant medical condition.

Although David understands that the Court must also consider the need for general deterrence when fashioning an appropriate punishment, we respectfully submit that substantial prison time will not advance those goals. Moreover, scholars have consistently concluded that it is the *certainty* of punishment, rather than its *severity*, that is the most effective deterrent for financial crimes.[74]

**D.  A Significant Downward Variance Serves the Interests of the Federal Prison System and is Fair to Mr. Kennedy**

Both Mr. Kennedy and society would benefit more from giving him a significant downward variance rather than warehousing him for 108 months to 135 months of custody—as suggested by the U.S. Probation Department Sentence Recommendation—at great expense to the taxpayers, with no corresponding benefit.[75] At a cost in today's dollars of approximately

---

[73] *See Gupta*, 904 F. Supp. 2d at 352.

[74] *See United States v. Velazquez*, No. 16-CR-233 (AKH), 2017 WL 2782037, *4 (S.D.N.Y. May 26, 2017) ("Current empirical research on general deterrence shows that while certainty of punishment has a deterrent effect, 'increases in severity of punishments do not yield significant (if any) marginal deterrent effects . . . Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence.'") (citation omitted). *See* Richard A. Frase, *A More Perfect System: Twenty-five Years of Guidelines Sentencing Reform (Punishment Purposes)*, 58 Stan. L. Rev. 67, 80 (2005).

[75] *See* PSR ¶ 119.

$49,770.00[76] per year, imprisoning him would cost at least $447,876.00 for the 108-month minimum sentence recommended by the Probation Department. Spending nearly $450,000 to incarcerate Mr. Kennedy makes no sense at all – he will remain a financial burden throughout his incarceration and will have lost nine years of time in which he could have been working to support his daughter and contribute towards her medical bills. Such expenditures of tax-payer money should be reserved for only the most dangerous and incorrigible offenders. Mr. Kennedy is neither dangerous nor incorrigible and does not need a substantial custodial sentence to deter him.

In addition, we ask Your Honor to take into consideration that when you are fashioning a sentence for David Kennedy that he will not have the benefit of being eligible for the Residential Drug Abuse Program ("RDAP") despite him having a verifiable substance abuse disorder. As a non-citizen who has an Immigration and Customs Enforcement (ICE) detainer, David is not eligible for placement in a federal halfway house. This automatically disqualifies him from being eligible for RDAP, through which he could have potentially received limited financial awards and preferred living quarters, in addition to a sentence reduction.[77] If participants complete the program, their sentences can be reduced by as much as 12 months.[78] We are also asking Your Honor to take into consideration that David will be ineligible for placement in a minimum security institution ("federal prison camp"), where many white-collar prisoners are incarcerated. At these institutions, the staff-to-inmate ratio is relatively low, there is limited or no perimeter fencing, dormitory housing, and a heavier emphasis on inmate life being work- and

---

[76] *Id.* at ¶ 128.  This cost does not account for inflation.
[77] Recidivism and federal bureau of prisons programs: Drug ... Accessed February 22, 2024. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220517_Recidivism-BOP-Drugs.pdf.
[78] What is the Residential Drug Abuse Program (RDA. Accessed February 22, 2024. https://famm.org/wp-content/uploads/FAQ-Residential-Drug-Abuse-Program-5.3.pdf.

program-oriented.[79] The camps are designed to provide inmates with more freedom, programs, and opportunities than higher-security prisons, where David will inevitably be sent instead.

We also ask Your Honor to take into consideration that David Kennedy has been incarcerated at MDC Brooklyn since August 23, 2023. The detention center has become notorious for the poor quality of life that its inmates are provided there. The problematic conditions include: an untenable ten-to-one ratio of prisoners to officers created by a severe shortage of correction officers, substandard medical and mental health services, and an excessive application of emergency lock-ins (or "lockdowns") that prevents inmates from leaving their cells.[80] Since his arrival at MDC, David has been subjected to lockdowns on the following days: August 23-29, 2023; October 18, 2023; October 19, 2023; October 27-30, 2023; November 4, 2023; November 10-11, 2023; November 17, 2023; November 23, 2023; November 25, 2023; December 2, 2023; December 8-9, 2023; December 14-18, 2023; December 26, 2023 through January 8, 2024; January 15-16, 2024; January 24, 2024; January 30, 2024; February 3-4, 2024; February 13, 2024; February 20-21, 2024; February 23-24, 2024; February 28, 2024; March 2-3, 2024; March 6-7, 2024; March 9, 2024; March 16-17, 2024; March 21-31, 2024; and he has been on a limited lockdown since April 1, 2024 that allows him only 1.5 hours outside of his cell per day. Altogether, David has been under lockdown for 83 days and counting.

In addition to these lockdowns, David has repeatedly had requests for pain relievers, sleeping pills, and prison-issued clothing ignored by the staff at MDC. From December 16

---

[79] "Federal Bureau of Prisons." BOP. Accessed February 22, 2024.
https://www.bop.gov/about/facilities/federal_prisons.jsp.

[80] Weiser, Benjamin. "Judge Refuses to Send Defendant in Drug Case to Troubled Brooklyn Jail." The New York Times, January 4, 2024.
https://www.nytimes.com/2024/01/04/nyregion/brooklyn-judge-mdc-jail.html?unlocked_article_code=1.XU0.6TSA.fD1i7_xKp1Ry&smid=nytcore-ios-share&referringSource=articleShare.

through December 22, 2023, David was not allowed any form of contact with his family or defense counsel. Then, from January 12 through January 21, 2024, David had no access to emails or media. His defense counsel has made several attempts to send literature to David at MDC but he has not received a single book as of yet despite confirmation that these books were delivered to MDC each time. Mail from David's friends and family in the United Kingdom are always returned by the staff at MDC because they arrive in light blue Royal Mail envelopes. As a result, David has been entirely unable to receive mail from the UK at MDC. When friends and family try to communicate with him through phone calls, the line regularly cuts off at the detention center, forcing David to wait another hour to use the phone again. A separate issue that David has encountered at MDC is the sub-standard quality of the food that is provided to the inmates there. He has discovered maggots in his food, and is often confronted with the choice of eating rotten fruits and vegetables and drinking expired milk or going to bed hungry. The many problems at MDC Brooklyn that currently cause David distress also include the management of inmates' commissary accounts. Despite the commissary official limit for every two weeks being listed at $180, totaling $360, David has been limited to $75 for months now seemingly without any explanation as to why there has been such a dramatic, and sudden break from normal policy.[81] To make matters worse for David, there were weeks where his commissary limit was further capped to $30.[82] Even though funds for the commissary are supposed to be revalidated on the first and fifteenth day of every month, as stated on MDC official bulletins, this has never been the case for David. As a result of this inexplicable decision-making by the staff at MDC Brooklyn, David has struggled to obtain basic items like clothing, toothpaste, soap, razors, etc. On the rare occasion when he does have access to enough of his commissary funds to make these

---

[81] EXHIBIT B – BOP TRULINCS Account Transactions - Commissary for David Kennedy
[82] Ibid.

purchases, the fact still remains that the commissary at MDC is rarely fully stocked, so more often than not these items remain unavailable to him. David does not have family living in the United States for him to turn to when there is a problem with his commissary account or when he is in desperate need of basic necessities. At MDC Brooklyn, David is entirely on his own.

Undeterred by the state of things at MDC Brooklyn, David has nevertheless found a way to make the most of his time there. Since October 20, 2023, he has been working for Food Services. On January 26, 2024, David received a work performance rating for the evaluation period of December 26, 2023 through January 25, 2024, which covered 175 hours of satisfactory work.[83] He received a rating of outstanding for the following categories: quality of work, quantity of work, initiative, interest; eagerness to learn, ability to learn, and response to supervision and instruction.[84] The lowest rating he scored was good, which he scored for the following categories: ability to work with others and need for supervision; dependability; safety; care of equipment.[85] The staff that reviewed David's performance recommended that his pay be increased and that he receive a bonus.[86] As of the filing of this sentencing memorandum, David Kennedy has worked for Food Services for 166 days and he has lived at MDC Brooklyn for 224 days.

Since the Metropolitan Correctional Center closed in 2021, the notoriety surrounding living conditions at MDC Brooklyn has become impossible for federal judges in Manhattan and Brooklyn to ignore to the extent that some are now giving reduced sentences to defendants based on the conditions of their confinement at this detention center.[87] For instance, on January 4, 2024,

---

[83] EXHIBIT C – Work Performance Rating for David Kennedy
[84] Ibid.
[85] Ibid.
[86] Ibid.
[87] Weiser, Benjamin. "Judge Refuses to Send Defendant in Drug Case to Troubled Brooklyn Jail." The New York Times, January 4, 2024.

the Honorable Jesse M. Furman cited all of these factors in his refusal to order that a defendant be sent to MDC while awaiting sentencing.[88] We are asking that Your Honor take into consideration the hardships that David Kennedy has endured while in the custody of the Bureau of Federal Prisons at MDC Brooklyn.

Furthermore, we ask Your Honor to take into consideration that David Kennedy's net income from the scheme that netted high fraud amounts was less than $90,000.[89] David did not make a considerable profit from the scheme and he did not live lavishly off of the coattails of this scheme. His lifestyle did not change by any degree whatsoever. Then, in May of 2016, David stopped participating in the scheme of his own volition, many years before his arrest. He had come to terms, on his own, with the reality that the scheme was never going to be a real successful business and he walked away from the scheme.

We also ask Your Honor to take into consideration that David Kennedy's journey to the United States following his arrest was harrowing at every interval. After his arrest on November 30, 2022, he was taken to Marbella, Spain for a few hours by Interpol. He was then moved to Malaga, Spain for another few hours. He would spend a night in Madrid, Spain, before being held at the Soto Del Real Prison for the next nine months. At the end of this period, David was brought to the United States and was subsequently admitted to MDC Brooklyn where he has remained since August 23, 2023.

We ask Your Honor to take into consideration that Savraj Gata-Aura (P6014011/C. Tyler) was sentenced to 48 months' imprisonment, to be followed by 3 years' supervised release, and imposed $2,988,225.00 in forfeiture. Mr. Gata-Aura was ordered to pay $39,972,000 in

---

https://www.nytimes.com/2024/01/04/nyregion/brooklyn-judge-mdc-jail.html?unlocked_article_
code=1.XU0.6TSA.fD1i7_xKp1Ry&smid=nytcore-ios-share&referringSource=articleShare.
[88] Ibid.
[89] EXHIBIT D - David Kennedy's Earnings

restitution. This is a related case to David Kennedy's but there are significant differences between David's role in the scheme and Savraj Gata-Aura's role in their scheme. Mr. Gata-Aura was actively managing their scheme, which is a role that David never assumed, and remained a participant in the scheme for a much longer period than David, who ultimately withdrew from the scheme entirely and of his own volition. In addition, David met with the Government for a proffer and gave up every bit of information that was asked of him. However, by this point, cooperation was not going to be a viable option for David, but it was not for a lack of trying on his part.

We submit that under these circumstances, a significant downward variance serves the ends of punishment, is consistent with BOP's current efforts to reduce the prison population and serves the public interest.

## V.      CONCLUSION

David Kennedy's life, though marred by early loss and subsequent personal challenges, has been a testament to his enduring commitment to family and his unshakeable dedication to his daughter, Daniella. His mistakes have undoubtedly shaped his journey, yet they do not define the entirety of his character. This Court is implored to recognize Kennedy's efforts toward rehabilitation and his unwavering support for his daughter, particularly as she faces significant health challenges. The sentence of probation proposed in this memo is commensurate with the principles of justice—"sufficient, but not greater than necessary"—to address Mr. Kennedy's actions. Considering his history, the unique circumstances of his case, and the guiding tenets of Section 3553, a sentence of probation would serve not only the interests of justice but also the best interests of his daughter, who needs her father by her side.

Dated: April 03, 2024

Respectfully submitted,

Spodek Law Group PC
By: */s/ Todd Spodek*
Todd Spodek
233 Broadway, Suite 710
New York, NY 10007
ts@spodeklawgroup.com
Tel.: (212) 300-5196

*Attorneys for Defendant*
*David Kennedy*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 3rd day of April 2024, I electronically filed this Sentencing Memorandum On Behalf Of Defendant David Kennedy and the exhibits annexed thereto, using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.


*/s/ Todd Spodek*
Todd Spodek

*Attorney for Defendant David Kennedy*